All right, the first case we're going to hear is Liberty University v. Citizens Insurance, and Mr. Molloy, we'll hear from you. Good morning, Your Honor, and may it please the Court, John Molloy on behalf of the appellants, whom I will refer to collectively as Hanover. As the Court is aware, this is an insurance coverage matter involving the duty to defend claims against Liberty University. Those claims are for kidnapping, violation of RICO, and conspiracy to violate civil rights. These claims in the underlying lawsuit grow out of a rather ugly set of facts involving the international abduction of a child for the express purpose of denying the other parent, the non-abducting parent, visitation and custody of the child. Well, when you say ugly, it really comes down to a custody dispute with an overlay of ideological and religious disputes. Yes, Your Honor. I mean, from the wife's point of view, it's not ugly, or at least the biological mother's point of view, it's not ugly. From the other mother's view, it is ugly, but they're having some prosecutions, of course, for taking the child. That's right. I didn't mean to imply a judgment towards either party, simply that we've got a kid who's been abducted. As the Court observes, people have gone to jail. There's been protracted litigation in Virginia and Vermont state courts involving the custody of this child, which undoubtedly was difficult for all involved, and that's really all I was referring to. But the issue that we have this morning is a fairly narrow issue, although it implicates several different coverage parts under the policies at issue. The narrow issue is, is there a duty to defend under these policies for the claims against liberty? Again, those claims are for kidnapping, RICO violation, and conspiracy to violate the civil rights of the child and the plaintiff in the underlying case in Vermont. Now, the lower court found that there was a duty to defend, and in doing so really got it wrong because the judge misconstrued really both the law, but more importantly, the allegations that are made against liberty. I think there is not much disagreement between the parties as to the applicable law and the duty to defend. It's well-developed in Vermont, as it is in most states. We look at the allegations of the complaint. We lay those alongside the- Is this Virginia law or Vermont law? This is Virginia law, Your Honor. Virginia, right. Yes, the policies- It's a corner's policy. You look at the complaint, look at the policy, and compare the two. That's right. The policies were issued in Virginia, I believe through a Virginia broker, and there's really been no dispute that Virginia law applies. Now, there are three, broadly speaking, coverage parts implicated by the claims against liberty. Under the CGL policies, the commercial general liability policies, there's coverage A and coverage B. Coverage A provides coverage for bodily injury or property damage caused by an occurrence, and I will address all three of those momentarily. Coverage B under those policies provides coverage for personal injury caused by an offense. There are exclusions that come into play as well, which I'll address. And then the third, sort of broadly speaking, category of coverage is under the school and educators legal liability form, which we refer to as the CEL form. That coverage provides coverage for wrongful acts that aren't otherwise excluded, and I'll address that further as well. Now, the lower court, with regard to coverage A and the occurrence, the coverage that provides coverage for bodily injury or property damage caused by an occurrence, the court correctly found that the underlying complaint does not allege bodily injury because in Virginia the case law establishes that purely emotional harm is not a bodily injury. But the court incorrectly found that there was an occurrence alleged and that there was property damage alleged. And actually, before addressing the policy language, let me step back for a moment. The mistake that the lower court made really is fairly consistent and pervades the court's analysis and decision under all of these coverage parts. So let me first address what is alleged against Liberty, because that really informs the rest of the discussion and the rest of the argument. Excuse me. In the complaint, the very first paragraphs, the prefatory language, the plaintiffs allege that all defendants, which would include Liberty, engaged in a conspiracy to kidnap this child and to deprive the noncustodial mother of visitation rights. It is alleged that the kidnapping was intentional, that all defendants, again including Liberty, conspired to violate RICO, and that the purpose of this, the express purpose of this, was to thwart court orders that had been issued in both Virginia and Vermont relating to the custody of this child. The allegation is that this was done with the assistance and encouragement of all of the defendants, again including Liberty. There are allegations that a group was formed to solicit donations to facilitate the flight and continued to allow the child and the absconding mother to remain out of the country. That's the Protect Isabella Coalition, or PICC. It's alleged that the very purpose of that organization was to prevent contact, court-ordered contact between the child and the complaining noncustodial mother. The president of Liberty University is identified as the president of Liberty, not as simply as himself, as making a substantial donation to that organization. It's further alleged that by the summer of 2009, Miller I'm not sure that particular allegation gets you anywhere. I mean, the president can make donations to a lot of causes, but it seems to me you have a point that all the conduct alleged in this, regardless of who carried it out, all the conduct was intended conduct, was planned and deliberate to carry out these policies that were held by the people participating. And the only question is, was Liberty alleged to have done that? And I guess your argument is, number one, they're alleged to be a co-conspirator. Number two, the agents who were carrying out these acts were alleged to be agents of Liberty. And it seems to me that sort of ends your argument, doesn't it? That's exactly it in a nutshell, Your Honor. I think the allegations of the complaint are clearly sufficient against or sufficiently clear against Liberty that it was a direct participant in this conspiracy. And as Your Honor points out, they're further alleged to be liable, under respondeat superior theory, for the conduct of its agents. Now, Liberty has taken the position, and the trial court really adopted this position, that the allegations of agency were insufficient and that the allegations against Liberty directly are insufficient. And that was a mistake because on a duty to defend analysis, we accept the pleadings as true and we assume that they will be proven. Well, there's about three or four places that they allege a person is acting as an agent for Liberty. Correct. And that Liberty encouraged all this conduct. And promoted it. Promoted it. And it's further alleged that the conspirators acted in accordance with what they understood to be Liberty's directions and goals and its position on the appropriate response to a custodial order involving same-sex parents with which they disagreed. And, for example, Your Honor, in the damages section of the complaint, which sort of summarizes everything, it's alleged that all defendants are liable for compensatory and punitive damages for the intentional tort of kidnapping in violation of civil rights. The other critical allegations in the complaint, there are several, as you pointed out, Your Honor, but it's really paragraphs 49 and 62, I think, that are the most important. Paragraph 49 alleges that Liberty University encouraged its agents to disregard state laws and promoted and condoned its agents' tortious and racketeering activity. Liberty and the trial court focused on the other. It goes on to say, and Liberty also condoned, explicitly ratified its agents' tortious racketeering activity. Correct. And Liberty and the trial court both focus on ratification, which would have to come after the fact and therefore would suggest that Liberty was an unknowing participant in this conspiracy or that the allegations don't really suggest that Liberty was involved in the conspiracy. You're rapidly running out of time, and I would appreciate it if, at least briefly, you would tie your argument to the contract and the coverage issues that you laid out initially. Of course, Your Honor. The bodily injury, the property injury caused by an occurrence. Sure. If you could just walk briefly through your argument as to those and then the exclusions, but if you could just tie it to the contract. I will. Firstly, on the section of the policy that provides coverage for bodily injury or property damage caused by an occurrence, an occurrence, the occurrence jurisprudence is fairly well developed in Virginia. We have the AES case that is fairly recent, and conduct which is intentional and desired with the intent to bring about a certain result or if the result is substantially certain to follow from the conduct, it's not an occurrence. That's exactly what we have here. We have an alleged conspiracy, and certainly the goal of the conspiracy is to carry out the objective of the conspiracy. So I don't think – Is that different from the exclusion that says no in violation of rights of another are not covered, criminal acts are not covered? Yes, that's found in coverage B and appears again in a slightly different form in the cell coverage. Cell coverage. Correct. The knowing violation exclusion applies here for substantially the same reason, that the occurrence – that there's no occurrence because what we have alleged here is an agreement, an alleged agreement by multiple parties to deprive the underlying plaintiff of her custodial rights and to deprive the child of a traditional United States upbringing. I didn't know why you had to go through occurrence. I thought there's just a general exclusion for expected or intended injury. There is, Your Honor, and the two are very closely related. Why it's important, though, is really for a number of reasons. It's what divides coverage at the threshold. That's correct, Your Honor. So you have to get to that, or at least as I read it. That's right. Liberty has to prove that there's an occurrence before we even look at the exclusions. If they don't get into the insuring agreement, the exclusions don't really matter. But here, the occurrence argument and the expected or intended argument are really one and the same thing. And could you briefly address the severability of the insured's issue, which appellees suggest requires that each insured be considered separately for each exclusion. Right. We agree that the availability of coverage has to be viewed from Liberty's standpoint as if Liberty is the only insured under the policy because they're the only insured seeking coverage. So the separation of insured's clause, may I continue, Your Honor? Yes, of course. The separation of insured's clause is really a bit of a red herring here. That clause comes into effect or becomes important when you have multiple insured's that have been sued in the same lawsuit. Depending on what the coverage issue is, what the exclusions are that might apply, there could potentially be coverage for one insured but not the other insured. But the separation of insured's clause doesn't really apply here because we've only got one insured. And you look at it from Liberty's point of view, and you can't separate Liberty from its own agents because the corporation only acts through its agents. Exactly right, Your Honor. And there are cases cited in our brief for the proposition that the intentional and tortious conduct of an employee or an agent is imputed to the principal for purposes of determining coverage. All right, Mr. Johnson. Thank you. Good morning. May it please the Court, my name is Hal Johnson, and I represent the appellee, Liberty University. Your Honor, perhaps I should start with the separation of insured's issue and just pick up where Mr. Malloy left off. And the separation of insured's clause has been interpreted by this court in the IFCO systems case as plausibly allowing the court to consider the intent of the employer as completely separate and apart from the intent of the employee. In that IFCO systems case, the employee was accused of stealing $1.6 million worth of merchandise from one of the employer's customers. And this court recognized that under the clear language of the separation of insured's provision, you can't automatically attribute that intent. Well, that's because each of those were insured's. But in this case, Liberty is the only insured that we're looking at. In other words, if they were insuring all the parties, you have to take the conduct of each of the parties and measure them against the policy. It says each insured shall be examined under the policy as a named insured. And in this case, Liberty is the one that's the named insured, and so you look at the allegations against Liberty and measure them against the policy. And the question in this case is whether the allegations against Liberty are if Liberty did what it was said, is that a risk that's covered by the policy. I don't think you can start separating Liberty from its own agents when they allege that Liberty did it through its agents. Well, but that's exactly what this court recognized in the IFCO case. And, Your Honor, I would point out Liberty is not the only insured. When you have an employee that goes home with a company car and gets drunk and then gets into an accident and he's on a frolic of his own, the liability that injures somebody, the person's going to be sued, the employee's going to be sued, as is the employer. The question is did the employer negligently hire the person? Did the person inadequately supervise? But in this case, the whole allegation is that Liberty was in favor of this. This case involves an ideological and religious advancement, as they allege it. In other words, all the defendants took the position that this child should be with a biological mother and they should be separated and protected from the court orders. That's the whole of the abduction and all the conduct. And that Liberty participated in this, ratified it, carried it out, and acted through its agents in doing so. This is not a case where we have wayward agents and Liberty innocently standing by, at least as alleged. Liberty is alleged to be one of the centerpieces. Your Honor, I would agree that it's essentially a case of guilt by association. Liberty is accused of being responsible because of its ideological stance, as Your Honor pointed out. No, you're not reading the complaint fairly at all. Your Honor, nowhere does it actually... You take the complaint at its face value under Virginia law, and the complaint says that Liberty encouraged this, they condoned it, they ratified it, and then it alleges that various agents throughout acting on behalf of Liberty did this. And it alleges that Liberty did so through its classroom instruction of students, through public commencement. No, no, no, no, that's background. That isn't where they allege that. You're not giving the complaint its fair. Look at complaint 49 and 62. Your Honor, I think that the court is not allowed to disregard certain facts in the complaint as mere background. No, they're background. And the fact that, for instance, I would give you credit, the fact that the president of the university gave donations in support of this effort doesn't mean that he was acting on behalf of Liberty. He could have been acting on behalf of himself, even if he was. But the fact that they make that allegation suggests that there is more, it provides rationale and background to support why Liberty is doing this. The leader of Liberty, the people involved are against gay marriage, children in the gay marriage, and they were trying to take this mother and retrieve her from that situation. And Liberty was right behind it, as alleged. I don't know if this is factually so. And, Your Honor, under the AES v. Steadfast case, the court must consider the specific acts, the specific nature of the conduct alleged against Liberty, not the broad conclusory allegations. And that's why in AES the court said that a All the allegations in this case, all the allegations are basically a conspiracy to get this child away from the gay marriage. I don't know how you can Your Honor Liberty University, through its public declaration, promoted, condoned, explicitly ratified its agents' torturous and racketeering activity. But that public Liberty and its related, Liberty encouraged its agents to disregard state laws governing parental rights. Your Honor, the specific facts, though, are that Liberty's faculty represented Lisa Miller in a custody dispute. Nothing unlawful about that. Nothing that suggests they intended or knew that Lisa Miller would flee to Nicaragua based on their legal representation. Those are part of the facts, but it's not the entirety of the complaint. You are wanting us to look at the sort of conclusory background arguments rather than the complaint as a whole. Your Honor, I would respectfully disagree with that. If you look, the FWIES v. Selective Insurance case that this court decided in 1995, and we cite in our brief, makes clear that the court must consider all of the allegations. And if any of them would fall within the coverage of the policy, then the duty to defend is triggered. Except how much Liberty is drawn into conspiracy by allegations and is a central part of the conspiracy. The fact that they went and bought bread on a particular day and injured somebody doesn't mean that they aren't involved in the conspiracy. And the risk that being asked to defend is intended. They deliberately wanted to participate, according to the allegations, in this effort to protect the child. Could I clarify? I'm sorry. Is it your argument that, for example, that the fact that Liberty engaged in actions that would clearly not fall within the realm of the tortious, the advocacy in the classroom, for example, triggers coverage because it's a part of the allegations, part of the allegations of the complaint, even though there are other allegations of the complaint? For example, that Liberty is held out as a related ministry of the Thomas Road Baptist Church, which was the entity that was actually providing active support. So you're saying, you're positing that the case law supports the distinction that provides for coverage when some of the allegations would be covered, but not all? It absolutely does. And I think that's well established under the case law, and particularly in the Fwee's case. I would also make two additional points to respond to Your Honor's line of questioning. First of all, the idea that there was a conspiracy to withhold Isabella from her mother and to make a statement about same-sex parental rights, that's not the harm that is alleged in this complaint. The harm alleged arises out of Isabella's detention in Nicaragua. That's too narrow, too. The plan was, first of all, the biological mother, was it Lisa Miller? She basically went down and was nurtured in her conversion rights, and she wanted to disassociate, and did disassociate legally, from her wife or her spouse. Correct. And she, pursuant to that separation, she did not believe in raising a child in that context, and accordingly defied court orders. And in doing all of that, she had the assistance of a bunch of people around her who planned, helped, financed, physically did things to assist her in the conversion, the movement to Canada, movement to Nicaragua, and the concealment. Now, all of these various acts were contributed to by various people doing various things. Some people took them across the border. Some people got donations. Some people sent the materials, collected the child's materials and sent them down. All kinds of acts. But it doesn't matter, the individual acts. What matters is that the risk in this case was the defiance of the court orders and the absconding, taking the child, assisting the conspiracy in taking the child away from the United States and protecting the order. That's the allegation, and that's all intentional conduct. And, Your Honor, nowhere is it alleged that Liberty knew, had any idea, that Lisa Miller would be going to Nicaragua. And that is the injury that's alleged, particularly with respect to Isabella. What do you think they're sitting down there planning to do? You think everybody's operating in a little cell? I mean, the allegations, the complaint is just as clear as a pill. Well, Your Honor, there are allegations against 11 different defendants, and Liberty is alleged only, the only specific acts alleged against Liberty relate to classroom instruction, public pronouncements, the ideological debate. Three or four of these defendants are alleged to be agents of... Your Honor, the only allegation of agency relates to Victoria Hyden. She's the only person in the complaint alleged to be an agent of Liberty, and to the extent that she is, she would be an insured under the policy. All of the defendants herein, in both their individual capacities and as agents of TRBC, Liberty University, et cetera, are liable for conspiring with Lisa Miller and with each other to kidnap her and to assure her continued detention outside the state of Vermont. And that is exactly the kind of conclusory allegation that the court, the Virginia Supreme Court and AES... You're not evaluating the complaint. You're taking it at its face value, right, for coverage? But you have to examine the facts, not the causes of action. No, no. We have to examine what's alleged. Yes, sir. And what's alleged is deliberate conduct on behalf of Liberty to assist this whole effort. But that deliberate conduct by Liberty is not defined. It's not stated except for the classroom instruction and the legal representation of Lisa Miller. So you would say that the characterizations of the relationships with the other entities, such as the church, are just that. They're conclusory allegations. They don't involve reference to specific facts. Yes, ma'am. And nowhere is it alleged. An agency relationship is alleged, but nowhere is it alleged that any of those individuals were acting on behalf of Liberty when they undertook conduct to help Lisa Miller abscond. And not only did the court below in this case found that, but so did the Vermont District Court in the underlying litigation. And that is important. A court on a coverage inquiry cannot just ignore the rulings of the court below. Otherwise you end up with inconsistent results. And I don't think that the insurance companies want a ruling which says that the duty to defend, once established under a complaint, can never change over the course of a case as rulings develop. Well, I would really like it if we could go back to the beginning. Are these claims made against Liberty for bodily injury, property damage, et cetera, arising from an occurrence? Before we get to the discussion of the exclusions. Yes, ma'am, they are. And that's, again, because you have to view it from the viewpoint of Liberty and also because of the separation of insurance clause. However, where is bodily injury? Bodily injury is alleged because it's asserted that Isabella has been deprived of medical care and dental care. That would allow the presentation of evidence in the case below as to the impact to Isabella resulting from the deprivation of health care. I don't have dental care, even though I don't have a cavity. I have an injury? No, sir, but my point is under Virginia's potentiality rule, the allegation of a lack of dental care could lead to the presentation of evidence at trial. So everybody who denies medical insurance to a child is injuring the child because there's no coverage in case in the future there's some injury? It certainly could lead to an injury, and the distinction, Your Honor, is one between the duty to defend in which the potential for presentation of evidence as to an injury resulting from the lack of medical care exists and the duty to indemnify where you'd have to actually prove the injury. I want to make one other point to Your Honor's suggestion that there is an intentional conspiracy here alleged. Even if that weighs against finding an occurrence, under Coverage Part B you don't have an occurrence requirement. Intentional conduct is covered under the personal and advertising injury portion of the policy. That portion of the policy provides coverage for offenses, not occurrences, but offenses. Offenses is not defined in the policy, but it's commonly understood to mean intentional or even criminal acts. And we point out in our brief that the... Personal and advertising injury is defined to include, I think it's... On these facts. Well, there's six different types, and the one that's alleged here is for false arrest, detention, or imprisonment. The detention, obviously, of Isabella away from her adoptive mother in Nicaragua. And there's no dispute that there is a personal and advertising injury alleged here. Hanover takes the position that the exclusions for knowing violations or criminal acts apply. But as we pointed out in our brief, those exclusions would swallow the express grant of coverage for an offense of false arrest, detention, or imprisonment because imprisonment necessarily, by definition, is the restriction of someone's rights. False arrest and detention are, by definition, the restriction of someone's rights. So while those exclusions may apply to other types of enumerated personal and advertising injury, they cannot apply to an instance of false arrest, detention, or imprisonment. I would point out, Your Honor, because... Isn't there an exclusion in that coverage that relates to intentional... Yes, sir, and that's the point I was just making, that the exclusion for a knowing violation of someone's rights would swallow the explicit grant of coverage for an offense of false arrest, detention, or imprisonment. How could you have an offense of false arrest without knowingly violating someone's rights? How about participating in defying court orders? I mean, it seems to me we've got to give... You've got to read those two clauses together, don't you? If you suppose that Liberty intended that Lisa Miller would defy court orders, that would be... They not only said that they knew, they said they encouraged it. The allegation is that Liberty encouraged her to do that. And thereby, to do so by detaining Isabella in Virginia. Or to defy court orders. That's a different, separate violation. Well, but, Your Honor, the defiance of court orders was by not turning Isabella over for custody or visitation. You're not going to obey the court orders, whether it's custodial or whether it's paying support or allowing visitation rights. It was first visitation rights, wasn't it? Yes, sir. And then later turned over to custodial rights. Yes, sir. That's correct. And the allegation is that Liberty, through its public declarations, ratified the conduct of other people in detaining... It encouraged them not to bless same-sex marriage. It encouraged them to defy court orders and civil disobedience. And ratified its agents' efforts in doing that. Complaint charges. Correct. And the injury resulting from those allegations is the detention of Isabella in Nicaragua, which has harmed both Janet Jenkins and Isabella. That detention is a personal and advertising injury. And so, even to the extent that Liberty may have intended to encourage the defiance of court orders, that would be covered under Coverage Part B. I would also point out that at no point is it alleged that Liberty expected that Lisa Miller would flee to Nicaragua. And the injuries to Isabella, substandard living... What does civil disobedience mean? We're not going to comply with the court orders? We're going to protect her? Wherever they protected her, the complaint alleges that Liberty encouraged that and ratified that. Well, Your Honor, I think there's a far difference between, a large difference between encouraging civil disobedience, which may involve being arrested and prosecuted, in the theme of the civil rights movement... The district court made a distinction. It didn't treat the, rightly or wrongly, it didn't treat the defendants as acting as a monolith. It broke out, it specifically assigned responsibility to various defendants. So, for example, it said that none of the individual defendants who aided Miller in taking Isabella to Nicaragua were alleged to have been acting as agents of Liberty University, that Liberty University's conduct, liberty per se, as liberty, primarily was involved in advocating on her behalf, soliciting donations and support, and things of that sort. So the district court's approach, whether correct or not, did not speak of a unilateral defendant. It parsed them. That's correct, and that's what it was supposed to do, because, again, Liberty is insured. Not all of the defendants are insured. Everything must be viewed through the prism of Liberty's viewpoint. Well, Liberty's insured for certain risks. They buy policies. And the insurance company is trying to define the risk it's covering. And this complaint seems to be alleging, if you take it fairly, I suggest, a Liberty's effort to carry out, rightly or wrongly, an act of civil disobedience and whatever that entails in order to separate Lisa Miller and her daughter from this marriage and have the child brought up in custody, in partial custody of this gay marriage, in defiance of Vermont law. And this was an ideological and religiously motivated effort of this group of people together to protect Lisa Miller. And they may be perfectly right, but they have to bear the consequences. And one of the consequences is, do you insure for that type of activity in carrying out the implementation of that type of activity? And it seems to me if it's planned and deliberate and all the acts carried out are deliberate, even though Liberty only did part of the conspiracy, is that the risk that the insurance company was asked to undertake? And I think the key to your question, Your Honor, is that kind of activity. The activity that is specifically alleged against Liberty is perfectly lawful activity. It's classroom instruction. It may be, but it's not classroom instruction. It's encouraging a conspiracy to deprive the courts of custody and of civil disobedience. The classroom allegation is just evidence. And then two paragraphs down they say, Liberty thus, in that manner, encouraged Lisa Miller and all the others. They're just alleging consistency as it was part of Liberty's policy. They teach it in the classrooms. The President announces it in his donation policy. And then the next paragraph said, and in this case they carried out those policies in encouraging a conspiracy. But all of those are very much intended and in conscience. They're acts of conscience, and they may be all perfectly legal. But the question in this case is, is that type of conduct, carrying out that type of policy, a policy for which the insurance company undertook a risk of coverage if they're sued for it? If they're sued for First Amendment violation of First Amendment rights, custodial rights, visitation rights, abduction, violation of the Hague Convention. All of these things were part of this effort. And the question is, Liberty didn't authorize them all. Clearly they didn't. They're not alleged to. But they're alleged as part, a material part. And I can't believe that not everybody there knew exactly what everything was going on. But that doesn't matter. They were engaged in a campaign. And that campaign was a deliberate campaign. And the question now is, we have, can we parse the conduct, as you're suggesting, either by persons or events, and say Liberty didn't engage enough of the conspiracy or a material part of the conspiracy in order to make an intentional conduct on behalf of Liberty. But if they, if the only conduct in the whole complaint is alleged to be intentional, every single act is alleged to be intentional, then it seemed to me, you look at the four corners and say, is that covered by insurance? Your Honor, I see that I'm out of time. You know, you can respond, please. Your Honor, I think that the Court is inferring facts and drawing assumptions from the allegations that are not justified from the specific allegations about Liberty's conduct. Did Liberty act intentionally? Yes, but it acted intentionally in instructing its students and in representing Lisa Miller in the custody battle, not in trying to help Lisa Miller flee to Nicaragua so that her daughter would be subjected to substandard living conditions and isolation and a lack of education, which is what is alleged. The harm alleged to Isabella was never on Liberty's radar screen. There are no facts in the complaint, anywhere in the complaint, to suggest that that harm was on Liberty's radar screen. And the Court is required, at the duty to defend stage... Do you think there's damage to Isabella alleged? It seems to me Isabella's mother takes her with an act of love and carries her away in trying to protect her. There's no evidence that Isabella protested. The evidence is you have two mothers protesting each other's conduct, and the real damage is to Jenkins, right? But the argument that you're trying to make is that who's alleged to have done that? Who's alleged to have instigated, participated, conspired? You're not defending what was done? Oh, absolutely not. No, ma'am. And to Your Honor's point, again, I apologize for exceeding my time, but to Your Honor's point about the real plaintiff being Janet Jenkins, the complaint is styled as Janet Jenkins and Isabella Jenkins by her next friend, Janet Jenkins. There are specific damages that relate solely to Isabella, such as the deprivation of personal property, the deprivation of education and health care. I didn't see that. That's in paragraphs 70 and 73. Belongings and things behind? Yes. She packed them up and sent them, according to the complaint. Some of them, but it's still alleged in paragraphs 70 and 73 that Isabella was subjected to the deprivation of personal property because she's in Nicaragua. And so I think there really are two plaintiffs here and two alleged sets of injuries. And again, liberty could never have foreseen, based on the factual allegations about liberty's conduct, could never have foreseen the injuries that are alleged with respect to Isabella. Okay. Thank you for your time, Your Honor. Mr. Malloy. Thank you, Your Honor. Depending on the questions the Court may have for me, I'll be very brief. I'd just like to address a couple of points. Firstly, the law in Virginia, and these cases are cited in our brief, holds that as part of the duty-to-defend analysis, if the insurance carrier would not be liable for a judgment entered on the complaint as drafted, as it exists, then there is no duty to defend. And here we don't have claims for seeking relief or damages because of classroom instruction or public pronouncements or things of that nature. We have allegations of kidnapping and other serious violations, and that is the harm for which recovery is sought. Mr. Malloy, the primary conceptual difficulty I'm having here is drawing the appropriate lines and allocating responsibility appropriately. So if a law school, for instance, has a clinic that represents the underprivileged and advocates civil disobedience or you understand where I'm going with this, and then there are loosely affiliated entities that take that charge beyond the ambit of its original context, and the victims of that substrata of participant engages in activity that is actionable, and the allegations are that these loose ties make them all agents in a broader conspiracy, I am concerned about some need for specific allegations of lines of responsibility there and guilt by association, I think as Mr. Johnson phrased it, and the ability of the original actor to engage in a defense of conduct that may or may not have included what ensued. That is a very long, rambling sort of explanation of my concerns. I understand your point, Your Honor. Yes. A couple of points on that. One is it's very difficult to answer the question in a vacuum because it wasn't fair. But I do have an answer. What's worrying me too. There are two things. There's what actually happened and only the evidence that comes out at trial can show us what actually happened. None of that matters for purposes of duty to defend analysis. The only thing that matters is what's alleged. And so to use your example, if a law school acted perfectly appropriately, but the allegation was that they did not, there's no coverage for that. That's the analysis that we have to do. Now the other sort of component of that is this case really isn't about public pronouncements or classroom advocacy or hypothetical instruction on public defying civil disobedience, because there's no relief sought for any of that. And that's really just, I think, part of the background narrative here to show that by engaging this conspiracy, Liberty was acting in conformance with and consistent with its alleged views on the rights of same-sex parents. Again, the gravamen of this complaint, and that's what we have to look at, is all intentional misconduct, criminal conduct, conspiracy, kidnapping, and the rest of it. I think this case is really addressed by the Court's prior decision in National Fruit, where the Court found there was no duty to defend because, in the Court's words, the complaint was completely devoid of the new or should-have-known language that would suggest a claim for negligence. There is no claim for recklessness. It's all intentional conduct, and for that reason, either doesn't fall within the scope of the insuring agreement in the first place or is subject to one or more of the exclusions. Thank you, Your Honor. Thank you. We'll come down and greet counsel and then proceed on to the next case.
judges: Paul V. Niemeyer, Allyson K. Duncan, Stephanie D. Thacker